**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**


| | | |
|---|---|---|
| BANNER PHARMACAPS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:04CV00492 |
| | ) | |
| PERRIGO COMPANY; L. PERRIGO , | ) | |
| COMPANY; and PERRIGO | ) | |
| COMPANY OF SOUTH CAROLINA | ) | |
| | ) | |
| Defendants. | ) | |


**ORDER OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the court on Plaintiff's Motion to Compel Discovery (docket no. 38). Defendant has responded in opposition (docket no. 45) and Plaintiff has replied (docket no. 47). This matter is now ripe for disposition.

**Background**

Plaintiff has sued Defendants for the willful infringement of a patent, the so-called "'516 Patent". The parties are in the midst of the discovery process, and in addition to this Motion to Compel Discovery, Plaintiff has also filed a Motion for Letter of Request (docket no. 37) and a Motion for Partial Summary Judgment (docket no. 34). In this pleading, Plaintiff has requested that this court compel

one of the defendants, L. Perrigo Company, to fully respond to several disputed interrogatories and provide whatever relief the court deems appropriate.  Mot. to Compel Disc., pp. 1–2.

The patent-in-suit covers a form of single-dose medication consisting of a solid or unitary-core tablet or caplet "enrobed" by layers of gelatin film from opposite sides.  U.S. Patent No. 6,482,516 (issued Nov. 19, 2002).  Several other patents resulted from this invention, including the '983 Patent for a "tablet enrobing apparatus," which is not currently in dispute.  Mot. for Partial Summ. J., p. 2.

Between 1996 and 2003, Defendant sold tablets enrobed by Plaintiff to distributors that packaged them for sale to consumers.  First Amended Compl., p. 5.  Initially, the parties had an exclusive supply agreement, but because they were not able to renegotiate the agreement, Plaintiff then supplied Defendant on a purchase order basis.  Mot. for Partial Summ. J., pp. 3–4.  Plaintiff contends that during the exclusive supply arrangement, it shared proprietary manufacturing details with Defendant's employees and allowed them to visit Plaintiff's manufacturing facilities.   Pl.'s Br. in Supp. of Mot. to Compel, p. 14.

The '516 Patent issued in November of 2002, and in January of 2003 Plaintiff began marking its products with the appropriate patent number.  Mot. for Partial Summ. J., pp. 3–4.  Defendant stopped receiving film-enrobed tablets from

Plaintiff later in 2003 and thereafter shipped tablets to a Canadian company, Accucaps, for enrobing. First Amended Compl., p. 6.

Plaintiff contends that Defendant, with the help of Aldo Perrone, a Canadian citizen, and Accucaps, used the proprietary information it gained during its business relationship with Plaintiff to purposely create products that infringed the '516 Patent. Pl.'s Br., p. 14. Plaintiff filed suit in May of 2004, claiming willful patent infringement. Compl., p. 6. Defendant denies infringing the patent, argues that the '516 Patent is invalid, and adds several counterclaims including an antitrust violation. Answer and Countercl., pp. 5–7. The parties filed a joint discovery plan, setting out the claims and defenses upon which they would seek discovery and the *Markman*[1] issues dealing with claim construction. Joint Rule 26(f) Planning Report.

Unfortunately, discovery seems to have become acrimonious and the parties find themselves in disagreement on a number of issues. Plaintiff moves this court to compel Defendant to respond to several disputed interrogatories. Defendant responds with broad topical and temporal objections, as well as objections to specific interrogatories. Def.'s Br. in Opp'n to Mot. to Compel Disc.

**Discussion**

---

[1] The construction of a patent's claims is exclusively within the province of the courts. *Markman v. Westview Instruments*, 517 U.S. 370 (1996). If disputed by the parties, the court determines the scope and meaning of the patent claims, usually following a "Markman hearing," at which the parties present arguments as to why the court should construe the claims in certain ways. *S.S. White Burs, Inc. v. Neo-Flo, Inc.*, 56 Fed. R. Serv. 3d 33965 (E.D. Pa. 2003).

## I.  Standard of Review

Discovery is permitted into "any matter, not privileged, that is relevant to the claim or defense of any party."  FED. R. CIV. P. 26(b)(1).  Its purpose is to define and clarify issues presented in the case.  To be considered relevant, requested materials and information must be reasonably calculated to lead to the discovery of admissible evidence.  FED. R. CIV. P. 26(b)(1); *Republican Party v. Martin*, 136 F.R.D. 421, 425 (E.D.N.C. 1991); *see also Belmont Textile Mach. Co. v. Superba*, 48 F. Supp. 2d 521, 523–25 (W.D.N.C. 1999)(noting that patent litigation is "heavily predicated on extensive discovery" and refusing to preclude discovery where interrogating party has not specified precisely why information is sought).  The burden of showing that the requested discovery is not relevant falls on the party resisting discovery.  *Flora v. Hamilton*, 81 F.R.D. 576, 578 (M.D.N.C. 1978).  Generally, the mere cry of irrelevance without any statement in support of the objection is disfavored by the court.  *See, e.g.*, *Weddington v. Consol. Rail Corp.*, 101 F.R.D. 71 (N.D. Ind. 1984).   Additionally, otherwise permitted discovery may be limited in instances when the court finds it unreasonably cumulative or duplicative or when it is more conveniently available elsewhere. FED. R. CIV. P. 26(b)(2); *United States v. Duke Energy Corp.*, 214 F.R.D. 392, 393 (M.D.N.C. 2003), *aff'd on other grounds*, ----F.3d----, 2005 WL 1398658 (4th Cir. June 15, 2005).

4

In certain circumstances, interrogatories may be answered by providing business records in which the requested information can be found. FED. R. CIV. P. 33(d). To rely on Rule 33(d), parties must specifically designate the business records that answer each interrogatory and the burden of deriving the answer from the records must be substantially the same for the interrogating and responding parties. The responding party must provide "sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained." FED. R. CIV. P. 33(d); *Pulsecard, Inc. v. Discover Card Servs., Inc.*, No. CIV. A. 94-2304-EEO., 1996 WL 397567, at *2–3 (D. Kan. July 11, 1996)(unpublished). Referring to all records, "a mass" of records, or generically to past or future document production is "an abuse" of this option. *Pulsecard*, WL 397567 at *2. Parties who cannot comply with the requirements of Rule 33(d) must instead answer the interrogatories "fully and completely." *Id.* at *3.

## II.  Blanket Objections

In answering the interrogatories, Defendant seeks to narrow relevant discovery by repeatedly objecting to requests for information on the process of manufacture used for its allegedly infringing products, as well as on sales, conversations, and events prior to the date Defendant received actual notice of

the patent.  Def.'s Br.  For clarity and brevity's sake, these objections will be addressed first, before turning to specific interrogatories.

### A. Patent Scope and the Product/Process Distinction

In responding to several interrogatories, Defendant draws a distinction between the product at issue—gelatin-enrobed tablets or caplets—and the method and machinery of its manufacture.  Def.'s Br., pp. 2–4, 8–9.  As Plaintiff has alleged infringement of the patented product only ('516 Patent) and not its patented process or machinery ('983 Patent), Defendant argues that discovery into the latter should be precluded.  Def.'s Br., p. 3.  Defendant further contends that the scope of the '516 Patent is defined by its gelatin-to-plasticizer ratio and the degree of adherence between the film covering and the core, and refuses to answer questions relating to its manufacturing process or apparatus until Plaintiff explains "how and where the '516 Patent teaches that any particular process parameters and/or aspects of the machinery impact the extent to which gelatin film adheres or does not adhere to the tablet core."  Def.'s Br., p. 3–4.  Defendant provides no case law supporting its contention that information on the manufacture and machinery is irrelevant to infringement.

This court rejects Defendant's attempt to narrow discovery based on this distinction.  Plaintiff accuses Defendant of *willfully* infringing the '516 Patent. Willful infringement is proved by showing clear and convincing evidence "that the

infringer acted in disregard of the patent . . . [and] had no reasonable basis for believing it had a right to engage in the infringing acts." *Electro Med. Sys., S.A. v. Cooper Life Sci., Inc*., 34 F.3d 1048, 1056 (Fed. Cir. 1994)(quoting *Am. Med. Sys. v. Med. Eng'g Corp*., 6 F.3d 1523, 1530 (Fed. Cir. 1993)); *Akeva L.L.C. v. Mizuno Corp*., 243 F. Supp. 2d 418, 420 (M.D.N.C. 2003)(quoting John Dragseth, *Coerced Waiver of Attorney-Client Privilege for Opinions of Counsel in Patent Litigation*, 80 MINN. L. REV. 167, at 172 (1995)). In assessing whether Defendant willfully infringed Plaintiff's patent, courts consider the "totality of the circumstances," which includes

> evidence of intentional copying of the invention; whether the infringer conducted a prior investigation of the scope of the patent claims; whether the patent issued before the acts of infringement; whether the infringer attempted to conceal its acts; whether, and to what extent, the infringer took remedial actions; whether the infringer made a good faith effort to "design around" the patented invention; whether the infringer held a good faith basis for believing its acts were legitimate; the circumstances surrounding license negotiations; the infringer's behavior as a party to the litigation; the infringer's size and financial condition; and the closeness of the case on the issues of validity, infringement and willfulness.

*Id.* at 420 n.2. Defendant does not dispute that these particular factors are relevant as they apply to the patent-in-suit, but argues that they should not be applied to the process of manufacture.[2] Def.'s Br., pp. 8-9. The court disagrees.

---

[2]A similar distinction was present, but not decided, in *Caliper Tech. Corp. v. Molecular Devices Corp*., 213 F.R.D. 555 (N.D. Cal. 2003). Discovery on the process of manufacture of the allegedly infringing product was denied based on the court's determination that the information had already been provided. *Id.* at 557. Discovery of documents relating to "the invention, development, and/or commercialization of products, processes, methods, or instrumentalities"

7

"[W]illfulness is not determined by a per se rule, but rather by an actor's intent which may be revealed and inferred from *all* of the circumstances." *Akeva* 243 F. Supp. 2d at 421 (emphasis added). This court believes that the method of producing the allegedly infringed product is a circumstance highly relevant to intentional copying or "designing around." Further, the court believes that the development of the product itself and the development of the machinery needed to produce it are not necessarily distinct. Developing a process or machinery to build an infringing product could be seen as a step in the process of developing the infringing product itself; they may be commingled to the extent that they become inextricable. This court finds that discovery related to Defendant's process of manufacture is reasonably calculated to lead to the discovery of admissible evidence on the issue of willful infringement.

Defendant seeks to limit the scope of discovery only to issues relevant to the gelatin-to-plasticizer ratio and the degree of adherence between the gelatin coating and the tablet core, Def.'s Br., p. 3, while Plaintiff contends that all twenty-four of its '516 claims are still relevant. Pl.'s Reply, pp. 2–3. Defendant's attempt to limit discovery on these grounds is premature given that any dispute between the parties on how these claims should be constructed will be resolved after the scheduled *Markman* hearing. Planning Report, pp. 3–4.

---

*other than the patents-in-suit* was rejected. *Id.* at 560–61.

For these reasons, the court rejects Defendant's argument that information concerning manufacture or machinery is beyond the scope of discovery. Specific interrogatories relating to this are dealt with below.

**B. Arbitrary Cut-Off Date**

Defendant objects to answering interrogatories that seek information from the period prior to Defendant's actual notice of the infringement charge. It argues that information on sales, conversations, and otherwise relevant events are precluded from discovery since Plaintiff is barred from recovering damages for infringement taking place before actual or constructive notice of their patent was given.[3] Def.'s Br., pp. 5–6. Plaintiff argues that it did comply with notice requirements, but that regardless, the information it seeks is relevant. Pl.'s Reply, p. 6. While the parties disagree on when notice was properly given,[4] this court need not make a determination on that issue in order to resolve the present discovery dispute.

Defendant cites no case law to support its argument that such an arbitrary

---

[3] Section § 287(a) of the Patent Act sets forth conditions by which patent holders may give constructive notice of their patent monopoly to the public, but does not require patent holders to do so. However, "[i]n the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice." 35 U.S.C. § 287(a).

[4] Plaintiff argues that it complied with the statutory notice requirement of § 287(a) and therefore Defendant received constructive notice as part of the public on or around January 10, 2003, when Plaintiff began marking its products. Defendant argues that Plaintiff failed to meet the requirements of § 287(a) and that Defendant did not receive actual notice of infringement until it received notice of Plaintiff's complaint.

cut-off date is warranted in this case. While damages may not accrue prior to the alleged infringer receiving actual or constructive notice of the patent, the parties are conducting discovery into all the claims and defenses raised by both parties, including willful infringement and patent invalidity among others. Planning Report, pp. 1–2. Evidence of intentional copying or "designing around" the patent-in-suit are factors to be considered in evaluating the "totality of the circumstances" necessary for willful infringement and discovery need not be limited to the post-notice time period. *See, e.g., Micron Separations, Inc. v. Pall Corp.*, 159 F.R.D. 361, 363 (D. Mass. 1995)("when a party is charged with wilful infringement, what is relevant is that party's state of mind during the time when it is taking actions which allegedly infringe the patent"). Likewise, evidence of the allegedly infringing product's commercial success is important to the question of patent validity. *See Brown & Williamson Tobacco Corp. v. Philip Morris, Inc.*, 229 F.3d 1120, 1124 (Fed. Cir. 2000). This would be relevant regardless of whether the infringer had received notice of the patent. Even information from prior to the issuance of the patent may be relevant or may lead to the discovery of information relevant to infringement. *See Conopco, Inc. v. Warner-Lambert Co.*, No. Civ.A. 99-101(KSH), 1999 WL 1565082 at *4 (D.N.J. Jan. 24, 2000)(unpublished).

Defendant's objection to providing pre-notice information pushes the court to make "determinations on matters touching upon the merits of the case,

including various aspects of the parties' many claims and defenses." *Cornell Research Found. v. Hewlett Packard Co.*, 223 F.R.D. 55, 60 (N.D.N.Y. 2003). This court is similarly reluctant to limit discovery of what may be highly relevant information, unless the underlying matter can be "predicted with some degree of certainty." *Id.* Given that the issue of marking does not seem so easily settled,[5] the court will not foreclose the discovery of pre-notice information. The relevance of specific interrogatories to the claims and defenses of this case is explored below.

## III. Specific Interrogatories

Plaintiff moves to compel Defendant to respond fully to Plaintiff's First Set of Interrogatories, specifically Nos. 2, 3, 4, 7, 8, 9, 14, and 16. Plaintiff has withdrawn its motion with respect to Interrogatory No. 1.

**Interrogatory No. 2: Identify and describe the research, conception, design, redesign, development, testing, operation, diligence, reduction to practice, submission of applications for approval or requests for revision to the U.S. Food and Drug Administration or any other regulatory agency, advertising or other promotional efforts for each type of film-covered unitary-core tablet or caplet identified [previously]. Identify each person who at any time, has participated in or had any duty or responsibility for the research, conception, design, redesign, development, testing, operation, diligence, submission of applications for approval or requests for revision to the U.S. Food and Drug Administration or any other regulatory agency, advertising or promotional efforts for each type of film-covered unitary-core tablet or caplet identified [previously] and provide the dates for and state the circumstances of each such person's participation in each such event.**

Defendant argues that this interrogatory is unduly broad, vague, and not

---

[5]Plaintiff has moved for summary judgment on several issues, including marking, Mot. for Partial Summ. J., and it is premature to speculate on those issues here.

11

reasonably calculated to lead to the discovery of evidence admissible at trial. Pl.'s Br., p. 5. In response, Defendant offers to provide documents relating to (1) advertising or promotion that refers to the encapsulation of tablets or caplets, (2) the extent to which the film coverings on film covered tablets or caplets produced for Defendant by Accucaps adhere to the core, and (3) the characteristics and formulation of the gelatin used by Accucaps in the core encapsulating film. *See* Pl.'s Br., p. 5. Defendant has offered to provide information relating to its process and apparatus, only after Plaintiff shows "how and where the '516 patent teaches that any particular process parameters and/or aspects of the machinery impact the extent to which the gelatin film adheres or does not adhere to the tablet core." Def.'s Br., p. 4.

This court has already rejected Defendant's argument that discovery should be limited by precluding inquiry into its manufacturing process or machinery, or by reducing the patent's scope to only two of its features. *See* discussion *supra* Part II. A. Plaintiff alleges that Defendant's personnel, using information gained through its business relationship with Plaintiff, purposely designed a product that infringes its patent. Pl.'s Reply, p. 4. The information sought in this interrogatory on the processes used by Defendant in developing and manufacturing its allegedly infringing product, as well as on Defendant's employees who may have been involved, is reasonably calculated to lead to the discovery of admissible evidence on the issue of intentional copying (or

independent invention) and is thus relevant to the claim of willful infringement.

Defendant must fully answer this interrogatory.

**Interrogatory No. 3: Identify each past and present company or entity that has applied a gelatin covering to each type of tablet or caplet identified [previously] and describe the method for applying any covering to each type of tablet or caplet identified [previously].**

Defendant states that Plaintiff and Accucaps are the only companies to have applied gelatin covering to the Defendant's products. Defendant does not answer the portion of the interrogatory requesting Plaintiff's method for covering tablets. *See* Pl.'s Br., p. 8. Defendant objects to the relevance of Accucap's methods of covering tablets, but has provided documents comprising "all that Banner is entitled to and more." Def.'s Br., p. 4.

Plaintiff contends that it is entitled to discovery relating to its own method and cites *Walt Disney Co. v. DeFabiis*, 168 F.R.D. 281, 284 (C.D. Cal. 1996), for the proposition that "defendant is required to produce documents in its possession, custody or control regardless of whether the defendant believes that the plaintiff already has such documents." Pl.'s Br., p. 9. Nevertheless, otherwise discoverable information may be limited in cases where it could be obtained more easily from another source or where the likely benefit does not outweigh the burden given the particulars of the case. FED. R. CIV. P 26(b)(2); *Duke Energy Corp.*, 214 F.R.D. at 393. Plaintiff has not demonstrated how it benefits from having Defendant describe Plaintiff's own practices. Therefore,

13

Defendant is not obligated to answer the portion of this interrogatory that relates to Plaintiff's method.

On the other hand, the methods used by Accucaps to cover the tablets are discoverable as they are relevant to the "totality of the circumstances" and Plaintiff's claim of willful infringement. Methods involved in producing the allegedly infringing product are circumstances related to "intentional copying" or "designing around." *See* discussion *supra* Part II. A. This includes methods used by Accucaps to cover the tablets. In response to this interrogatory, Defendant referred Plaintiff to documents it had provided to answer Interrogatory No. 2. Defendant must fully respond regarding Accucaps' method of covering tablets. In doing so, Defendant is reminded that if it cannot or will not specify the exact documents containing the needed information, it must instead answer "fully and completely." *Pulsecard*, WL 397567 at *3.

**Interrogatory No. 4: Identify and describe the composition of any coating or covering for each unitary core tablet or caplet [identified previously], including, specifically, the gelatin content and the plasticizer content in dry parts for any covering. Identify and describe any changes in the composition of any coating or covering of the tablet and caplet.**

Defendant makes no objections to this interrogatory, but limits it nonetheless by providing an incomplete response. The interrogatory makes clear that Plaintiff seeks a broader description of coating or covering composition, including, but not limited to the gelatin-to-plasticizer ratio and the water content. As with

14

Interrogatory No. 2, Defendant attempts to limit the scope of the patent by focusing on only these two features. Pl.'s Br., p. 10. Limiting discovery based on one party's narrower understanding of the patent scope is premature given that a *Markman* hearing has not yet occurred. *See* discussion *supra* Part II. A.

Defendant explicitly limits its response further when it "assumes that [Plaintiff's] reference to 'any coating or covering' is directed to the gelatin coating, and not to any sub-coating." Pl.'s Br., p. 9. Defendant must include information relating to sub-coatings in its response to this interrogatory. Changes in the composition of the coating or covering of Defendant's enrobed tablets are also relevant to the "totality of the circumstances" that must be evaluated in addressing Plaintiff's willful infringement claim. *Akeva*, 243 F. Supp at 420 n.2 ("whether, and to what extent, the infringer took remedial actions" is a factor considered in determining willfulness).

Defendant must answer this interrogatory in its entirety. If Defendant is not able to adequately answer by reference to business records, it must write out complete answers.

**Interrogatory No. 7: For each film-covered unitary-core tablet product identified [previously], identify each product's date of first manufacture, first use by L. Perrigo, first offer for sale by L. Perrigo, and first sale by L. Perrigo. If the composition of any coating or covering for the tablet product has been modified or altered since the dates identified, also include the relevant dates for the modified or altered product.**

The parties disagree on whether this interrogatory refers to the first

manufacture, use, offer, and sale of enrobed tablets made by the Plaintiff or those made by Defendant and Accucaps. Pl.'s Br., p. 12; Def.'s Br., p. 5. As of Plaintiff's letter from February 12, 2005, however, Defendant was aware of Plaintiff's intended meaning. Pl.'s Br., Ex. A, p. 14. The court will assess the relevance of this interrogatory based on that intent.

Defendant agrees to provide summary sales data and the dates when the changes in the film formulation took place, but will only provide information after the date on which Defendant received actual notice of the patent. Pl.'s Br., p. 12. This court has already rejected Defendant's attempt to limit discovery in this manner. *See* discussion *supra* Part II. B.

The dates on which the allegedly infringing products were first manufactured, used, offered for sale, or sold is highly relevant. Not only do these dates offer a *terminus post quem*[6] for the alleged infringement, these dates are reasonably calculated to lead to admissible evidence on willful infringement. Plaintiff contends that Defendant made a deliberate effort to acquire knowledge of Plaintiff's product while still purchasing from Plaintiff. Pl.'s Br., p. 12. Specific dates on which Defendant engaged in potentially infringing activities, such as manufacturing, using, offering, or selling the tablets enrobed by Accucaps, could clarify the time frame and could suggest "evidence of intentional copying of the invention" and "whether the patent issued before the acts of infringement." Both

---

[6] Day after which the alleged infringement would have taken place—the earliest point in time in which the infringement would have occurred.

16

are included under the "totality of the circumstances" analysis and are therefore relevant to willful infringement. *Akeva*, 243 F. Supp. 2d at 420.

It appears that the portion of the interrogatory dealing with the dates modifications were made to the coating composition has been sufficiently answered. *See* Seigel Decl., Ex. C, p. 2 (attached to docket no. 46). Defendant must fully answer the remainder of this interrogatory.

**Interrogatory No. 8: Identify each past and current Perrigo employee or representative who has toured or visited any Banner facility, including those facilities in California and North Carolina, and describe all past and current processes and products observed during each visit.**

Defendant argues that discovery into the processes observed during visits to Plaintiff's facilities are irrelevant to the product claims present in this case. Def.'s Br., p. 7. Plaintiff alleges that Defendant willfully infringed the '516 Patent and thus an inquiry into the "totality of the circumstances" is required. Pl.'s Reply, p. 7. Because it is necessary to evaluate the "totality of the circumstance," the court rejects the argument that processes of manufacture should be distinguished and precluded from discovery. *See* discussion *supra* Part II. A. Nevertheless, this does not mean the interrogatory as presently written is not overly broad. Names of Defendant's past and current employees who have toured Plaintiff's facilities are plainly a source of admissible evidence as they can provide information on the knowledge gained during these visits and how this was used to develop the potentially infringing product. Pl.'s Br., p. 14. Therefore, under Rule

26(b)(1), the identities of these employees are discoverable. While processes involved in manufacturing the enrobed tablets may be relevant to the claim of willful infringement, the court can discern no reason that Plaintiff should be entitled to information on "all past and current processes and products observed during each visit." Plaintiff is therefore limited in its discovery to "all past and current processes for manufacturing enrobed tablets and all past and current enrobed tablets observed during each visit."

**Interrogatory No. 9: For each film-covered unitary-core tablet product identified [previously], identify the total unit sales and total dollar sales of each product (a) by year, (b) by product and year, and (c) by customer and by year, from first date of sale through present.**

Defendant argues that it should not have to provide the requested sales data for the time period prior to their actual notice of the patent. Pl.'s Br., p. 15. This court refuses to narrow the temporal scope of discovery before the issue of notice is settled. *See* discussion *supra* Part II. B. Additionally, information prior to the date of notice and even prior to the issuance of the '516 Patent is relevant to several of the claims and defenses presented by the parties.

Plaintiff argues that the requested sales data is relevant to Defendant's defense of patent invalidity. Section 103 of the Patent Act stipulates that a "patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person

18

of ordinary skill in the art to which the subject matter pertains."  35 U.S.C. § 103. In addition to the statutory requirements for nonobviousness, courts consider "secondary factors" that offer objective evidence of nonobviousness.  *Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966); *Brown & Williamson*, 229 F.3d  at 1124.  One of these factors is the commercial success of the product.  *John Deere*, 383 U.S. at 17.

The success of the allegedly infringing product can be used to demonstrate the commercial success of the patented invention.  *See Brown & Williamson*, 229 F.3d at 1130.  Sales information is relevant to the issue of commercial success and therefore to obviousness.  *See Kansas Jack, Inc. v. Kuhn*, 719 F.2d 1144, 1151 (Fed. Cir. 1983).  While the financial information relevant to commercial success need not be as detailed as that which is relevant to damages, requests for the number of units sold and sales in dollars is more narrowly tailored towards the issue of commercial success than towards damages.  *Dynacore Holdings Corp. v. U.S. Philips Corp.*, Nos. 01CIV.5012LTSGWG, 01CIV.10798LTSGWG, 2002 WL 31233246, *3 (S.D.N.Y. Oct. 4, 2002)(unpublished).  Here, Plaintiff seeks the total unit sales and total dollar sales by year and product, which is relevant to the issue of commercial success and therefore to Defendant's defense of patent invalidity.

Plaintiff further argues that sales data by customer and year is relevant to Defendant's antitrust claim and its request for damages.  When brought under § 2

19

of the Sherman Act, antitrust claims are subject to treble damages under § 4 of the Clayton Act. *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 173 (1965). To prevail in an antitrust action, the complaining party must show that wrongful actions resulted in an injury to its business and some indication of the amount of the damage. *In re Plywood Litig.*, 655 F.2d 627, 635 (5th Cir. 1981). Information on customers and potential customers is relevant to the charge of interfering with potential customers and the claim of lost sales. *Manville Sales Corp. v. Paramount Sys., Inc.*, 118 F.R.D. 420, 422 (E.D. Pa. 1987). Here, Defendant asserts that it has been hurt by Plaintiff's alleged interference with existing and potential customers. *See* Pl.'s Br., p. 15. The total unit sales and total dollar sales by product and customer is relevant as it may lead to admissible evidence on the antitrust claim.

Defendant must answer this interrogatory in its entirety. The court reminds Defendant that if it cannot specify the responsive documents with enough specificity such that the burden of retrieving the answers is the same for both parties, it must answer the interrogatory fully and completely without relying on business records. *Pulsecard*, WL 397567 at *3.

**Interrogatory No. 14: Describe in detail any discussions between L. Perrigo and Aldo Perrone relating to a method of applying a covering to a tablet or caplet, or any apparatus used in such a method, the nature and terms of any license agreement with Aldo Perrone regarding such method, the parties involved in the discussions, and the outcome of the discussions.**

This interrogatory seeks information central to Defendant's process of

20

developing the allegedly infringing products and is therefore relevant to Plaintiff's willful infringement claim. Defendant objects that the interrogatory seeks information relating to methods and machinery. Def.'s Br., pp. 8-9. Nevertheless, this does not preclude that information from being a part of the "totality of the circumstances" relevant to willful infringement. *See* discussion *supra* Part II. A. Plaintiff contends that Defendant collaborated with Perrone to create the machinery used to produce the allegedly infringing products. Pl.'s Br., p. 17. Therefore, discussions between Defendant and Perrone are reasonably calculated to lead to admissible evidence on Defendant's state of mind with respect to intentional copying, indepdendent invention, or "designing around" (all included in the "totality of the circumstances"). Similarly, discussion of license agreements may shed light on Defendant's state of mind with respect to willful infringement. Defendant must provide information regarding these conversations between Defendant and Perrone. Defendant must also provide the names of the parties involved in these discussions. The discovery of the identity and location of persons having knowledge of discoverable matters is expressly authorized by Rule 26(b)(1).

**Interrogatory No. 16: Describe in detail the business relationship between L. Perrigo and Accucaps Industries Limited ("Accucaps"); and identify these individuals of Accucaps' knowledge about any method used by Accucaps to cover tablets or caplets for L. Perrigo.**

Information on the method used by Accucaps to cover tablets for Defendant is discoverable. *See* discussion *supra* Part II. A. Given as much, and the express authority from Rule 26(b)(1) to discover the names and locations of people having discoverable information, Defendant must identify any individuals with knowledge of Accucaps methods for covering Defendant's tablets. Additionally, Defendant must supplement its response with more details on its business relationship with Accucaps.

**Conclusion**

For the foregoing reasons, Plaintiff's motion to compel discovery is GRANTED IN PART and DENIED IN PART. Defendants must supplement their previous answers to the interrogatories at issue in compliance with this order.

_____
Wallace W. Dixon
United States Magistrate Judge

July 15, 2005

22